**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---------------------------------------------------------x----------------------------------------------------------
                                                        :
**In re**                                               :   **Chapter 11**
                                                        :
**PosiGen, PBC, *et al.*,**[1]                          :   **Case No. 25-90787 (CML)**
                                                        :
       **Debtors.**  :   **(Jointly Administered)**
                                                        :
---------------------------------------------------------x----------------------------------------------------------
                                                        :
**ROOFTOP SOLAR I, LLC,**                               :
**ROOFTOP SOLAR II, LLC,**                              :
**ROOFTOP SOLAR III, LLC,**                             :
**ROOFTOP SOLAR IV, LLC,**                              :
**ROOFTOP SOLAR V, LLC,**                               :
**POSIGEN MARENGO PROJECT**                             :
**COMPANY, LLC,**                                       :
**POSIGEN OWNER, LLC,**                                 :
                                                        :
       **Plaintiffs,** :   **Adv. Pro. No. 25-_____ (CML)**
                                                        :
**v.**                                                  :
                                                        :
**POSIGEN, PBC,**                                       :
**POSIGEN, LLC,**                                       :
**POSIGEN OPERATIONS, LLC,**                            :
**POSIGEN DEVELOPER, LLC,**                             :
**POSIGEN PROVIDER, LLC,**                              :
**POSIGEN HOLDINGS, LLC,**                              :
**POSIGEN RAMPART HOLDCO, LLC,**                        :
**POSIGEN RAMPART, LLC,**                               :
**POSIGEN OWNER 2, LLC,**                               :
**POSIGEN OWNER 3, LLC,**                               :
                                                        :
       **Defendants.** :
                                                        :

---

[1] The last four digits of PosiGen, PBC's tax identification number are 9706. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/PosiGen. The Debtors' service address in these chapter 11 cases is 1000 Elmwood Park Boulevard, Suite A, Harahan, LA 70123.

## COMPLAINT

Rooftop Solar I, LLC, Rooftop Solar II, LLC, Rooftop Solar III, LLC, Rooftop Solar IV, LLC, Rooftop Solar V, LLC, PosiGen Marengo Project Company, LLC, and PosiGen Owner, LLC (together the "**Plaintiffs**" or "**Plaintiff Project Companies**"), by their attorneys, Weil, Gotshal & Manges LLP, file this adversary proceeding against the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Defendants**").  Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

This action seeks to remedy Defendants' admitted and brazen violations of Plaintiffs' property rights in tens of thousands of solar energy systems and the associated cash flowing from that ownership.  There can be no question, based on Defendants' own admissions and the incontrovertible facts, that the Defendants seized assets belonging to the Plaintiff Project Companies for themselves, in blatant disregard of Plaintiffs' ownership rights.  This theft was pervasive, intentional, and cannot be seriously disputed.

Defendants developed and operated solar power systems through a highly structured process in which the Debtors sold various solar Projects to the Project Companies.  The Project Companies then owned the rights to those Projects, including the cash they generated.  Those sales were financed by the members of those specific Project Companies.  Critical to the entire enterprise was the fact that following the sales from the Debtors to the Project Companies, those Project Companies *owned* the Projects *outright*, including the cash flow stream generated by the underlying leases of solar panels to customers.  The Project Companies thus had an uncontestable entitlement to the cash proceeds from these Projects, including lease revenues and revenues from Solar Renewable Energy Certificates and tax credit sales, for the benefit of their members.  The

documents governing the Project Companies make clear that the revenues belonging to each Project Company were required to be deposited in a segregated account for the benefit of the Project Company that owned the Project and the entitlement to the revenue generated thereby.

We now know—through the Defendants' admissions—that the Debtors simply ran roughshod over Plaintiff Project Companies' property rights, ignored the documents, stole Plaintiffs' cash, and purport to finance these chapter 11 cases with it. Rather than segregate each Project Company's lease and other project-related revenues as they were expressly obligated to do, Defendants instead operated an illicit, unauthorized centralized cash collection system. It is now clear that Defendants systematically deposited revenues belonging to Plaintiffs in an account in the name of the parent company, Defendant PosiGen, PBC. That money should be returned to its rightful owners, including Plaintiffs.

Remarkably, the Debtors have represented to the Court that they have $13.4 million in "unencumbered" cash. This is false. The cash with which the Debtors seek to finance these cases belongs to others, including Plaintiffs. It was required to be segregated for Plaintiffs' benefit. And when it was in Debtors' interest to do so—including in federal court in another district just weeks ago—the Debtors admitted as much. When a particular creditor sought to enjoin pre-petition bridge financing that was to be provided to certain of the Debtor entities, the Defendants protested that in the absence of that bridge financing, the Debtors would have no available cash. The United States District Court for the District of Connecticut relied on that representation in denying preliminary injunctive relief. The Defendants' statements to the Connecticut District Court mirror what they had been representing for months to the provider of the bridge financing: that the Defendants have no access to cash (because the cash doesn't belong to them) and will be forced to cease operations immediately absent incremental financing. These statements were repeated as

recently as two weeks ago in the first day "Informational Brief"[2] the Debtors filed in these chapter 11 cases, too. Defendants cannot now attempt an about-face and claim the opposite in support of their precipitous and improper chapter 11 filing.

Defendants' theft of Plaintiffs' segregated cash is emblematic of the misconduct that pervaded the Debtors' business. For instance, it is now clear that the Debtors seemed to be engaged in, at a minimum gross misconduct, and what could amount to fraud, by selling the *same* Projects to more than one Project Company or to other counterparties (including in self-dealing transactions), even though—as logic, common sense, and the law would dictate—each Project could only be sold to a single Project Company. Plaintiffs have further learned that the Debtors sold tax credits generated by Project Companies and diverted the funds away from those Project Companies without the consent of the members for whose benefit those sales were supposed to inure.

Other actions may arise based on these additional instances of misconduct. This action, however, seeks redress on the narrow but fundamental issue of immediate importance to the parties and the chapter 11 cases before this Court: Defendants must return the assets that they were required to segregate and pay to the Plaintiffs, but that Defendants instead unlawfully seized. Plaintiffs seek the return of these funds and a declaration that such misconduct should stop forthwith. In other words, this lawsuit seeks to remedy and further prevent Defendants' robbery of Paul to pay Peter. The Defendants should not be permitted to finance their ill-conceived chapter 11 cases with funds stolen from the Project Companies.

---

[2] It is telling that the Debtors could not support the relief they are seeking by submitting a typical declaration under penalty of perjury, relying on an unusual type of documentary support.

## NATURE OF THE ACTION

1.     This action concerns Defendants diverting property belonging to non-Debtors from non-Debtor bank accounts into their own bank accounts for their own, wrongful, benefits in violation of unambiguous obligations to the contrary.

2.     PosiGen, PBC ("**PosiGen**") is a clean-energy company that provides solar panels and other energy solutions to its customers through three silos: (i) a group of operating entities that develop and service residential solar systems; (ii) a group of entities used to raise what is known as "back leveraged" debt capital (the "**Backleverage Entities**"); and (iii) Project Companies owned, in whole or in part, by the Backleverage Entities that own and lease the majority of PosiGen's solar and energy assets.

3.     On July 31, 2025, PosiGen and its direct and indirect subsidiaries (together with PosiGen, the "**Company**") defaulted and cross-defaulted under many of its funded debt obligations.  Debtors' Informational Brief ¶ 3, *In re PosiGen, PBC, et al.*, No. 25-90787 (Bankr. S.D. Tex. 2025)[3], ECF No. 11.

4.     Legal and financial advisors, White & Case and FTI, were retained soon after this series of defaults and discovered serious problems with the Company's actions, including violations of its contractual obligations and using a centralized cash management system for operating cash and lease revenues and raising short-term financing secured by overlapping collateral. *Id.* ¶ 4.

5.     On August 15, 2025, BID Administrator, LLC ("**Brookfield**") exercised its right to install an independent manager over PosiGen Backleverage, LLC ("**Backleverage**") to protect the business and assets of the Backleverage Entities from further wrongdoing.  *Id.*

---

[3] Henceforth referred to as "**Ch. 11 Dkt.**".

6.      Between August and the commencement of the above-captioned chapter 11 cases, the Backleverage Entities and, more recently, Brookfield, have provided or facilitated the provision of emergency capital to PosiGen.

7.      Throughout the negotiations over these bridge financings, and for months prior, officers and representatives of the Debtors routinely acknowledged that the Debtors had no access to unencumbered cash and would be forced to immediately cease operations absent incremental bridge financing.

8.      Consistent with this position, on November 7, 2025, Defendants represented to the Connecticut Federal District Court, in a separate lawsuit brought by Connecticut Green Bank ("**CGB**"), that it "could not pay operating expenses, service its debt, pay its suppliers, or continue to make payroll…without an immediate cash infusion," and that it "would be forced into a disorderly collapse" absent rescue financing being offered by one of its creditors. Defendant PosiGen, PBC's Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction at 4, 16, *Connecticut Green Bank v. PosiGen, PBC*, No. 3:25-cv-01841-SVN (D. Conn. Nov. 12, 2025), Dkt. No. 64, 2025 WL 3158254.

9.      With no warning, in the midst of restructuring negotiations, on November 24, 2025 (the "**Petition Date**"), PosiGen and nine affiliated debtors commenced the above-captioned chapter 11 cases.

10.     To Plaintiffs' surprise, Defendants now purport, as of November 25, 2025 (the "**Motion Filing Date**") to "have approximately $13.4 million of unencumbered available cash on hand, the majority of which cash is held at the KeyBank Lease Revenue Collection Account," which is under the control of PosiGen.  *See* Ch. 11 Dkt., ECF No. 5 (the "**Cash Mgmt. Mot.**") ¶ 8.

11.     This apparently newfound $13.4 million of "unencumbered" cash primarily belongs to the Project Companies, including cash that, pursuant to the LLC Agreements governing Plaintiffs' Tax Equity Partnerships with third-party investors (the "**TEP LLCAs**", each a "**TEP LLCA**"), was required to be deposited in the Project Companies' accounts.

12.     Plaintiffs further discovered—and Defendants themselves have admitted—that Defendants unlawfully, and in violation of numerous contractual obligations, took revenue owned by its subsidiaries and indirect subsidiaries and placed them, as of the Motion Filing Date, in the KeyBank Lease Revenue Collection Account, held in PosiGen's name.

13.     Defendants now assert that these funds are available for Defendants to utilize in their chapter 11 cases to fund operations and other costs that are expected to arise during the course of the chapter 11 cases.

14.     Not so.  These are stolen funds rightfully owned by the Project Companies, and almost entirely by the Plaintiff Project Companies.  Plaintiffs bring this action to seek return of their assets and protect their property interests.

## THE PARTIES

### A.  Plaintiffs

15.     Plaintiff Rooftop Solar I, LLC is a Delaware limited liability company, with its principal place of business at 145 James Dr E, Ste 300, Saint Rose, Louisiana, 70087-4006.

16.     Plaintiff Rooftop Solar II, LLC is a Delaware limited liability company, with its principal place of business at 145 James Dr E, Ste 300, Saint Rose, Louisiana, 70087-4006.

17.     Plaintiff Rooftop Solar III, LLC is a Delaware limited liability company, with its principal place of business at 145 James Dr E, Ste 300, Saint Rose, Louisiana, 70087-4006.

18.     Plaintiff Rooftop Solar IV, LLC is a Delaware limited liability company, with its

principal place of business at 145 James Dr E, Ste 300, Saint Rose, Louisiana, 70087-4006.

19.     Plaintiff Rooftop Solar V, LLC is a Delaware limited liability company, with its principal place of business at 145 James Dr E, Ste 300, Saint Rose, Louisiana, 70087-4006.

20.     Plaintiff Marengo Project Co., LLC is a Delaware limited liability company, with its principal place of business at 145 James Dr E, Ste 300, Saint Rose, Louisiana, 70087-4006.

21.     Plaintiff PosiGen Owner LLC is a Delaware limited liability company, with its principal place of business at 145 James Dr E, Ste 300, Saint Rose, Louisiana, 70087-4006.

**B. Defendants**

22.     PosiGen, PBC is a Delaware public benefit Company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

23.     PosiGen Developer, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

24.     PosiGen Holdings, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

25.     PosiGen Operations, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

26.     PosiGen Owner 2, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

27.     PosiGen Owner 3, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

28.     PosiGen Provider, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

29.     PosiGen Rampart Holdco, LLC is a Delaware limited liability company, with its

principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

30.     PosiGen Rampart, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

31.     PosiGen, LLC is a Delaware limited liability company, with its principal place of business historically located at 720 N Post Oak Road, Houston, TX 77024.

32.     According to the first day declaration filed by Defendants in the above-captioned chapter 11 cases, at all relevant times, Defendants' principal place of business was in Texas.

33.     On or about November 24, 2025, Defendants filed with this Court voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.

## JURISDICTION AND VENUE

34.     The United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**" or the "**Court**") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

35.     This adversary proceeding arises in, arises under, and relates to the Defendants' underlying bankruptcy cases pending before this Court under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

36.     This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (O), and this Court has jurisdiction to hear and determine this proceeding and to enter a final order and judgment.  If this Court or any other court finds any part of this adversary proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to Defendants' bankruptcy cases and will have a material impact on the administration of Defendants' estates.

37.     Plaintiffs consent to entry of final orders and judgments by this Court in this

adversary proceeding pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 7008-1 of the Local Rules of the Bankruptcy Court (the "**Local Rules**").  Plaintiffs also consent to entry of final orders or judgment by this Court if it is determined that this Court cannot enter final orders or judgments consistent with Article III of the United States Constitution absent consent of the parties.

38.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>**FACTUAL ALLEGATIONS**</u>

I.     **PLAINTIFFS OWN THE CASH DEFENDANTS PURPORT TO USE TO FUND ITS BANKRUPTCY**

    A.  **Project Company Entities Own the Customer Agreement Revenue Payments and Are Intentionally Structured For Separate Cash Management**

39.     The Company is a "provider of affordable solar and energy efficiency" solutions for low-to-moderate income homeowners.  *See* Ch. 11 Dkt., ECF No. 11 ¶ 1.  The Company's primary business is developing and installing "photovoltaic systems that convert solar radiation into electrical energy usable by standard electrical appliances (the "**Solar Systems**")." *See* Ch. 11 Dkt., ECF No. 11 ¶ 12.  The Company also "market[s], sell[s], and install[s] products and services, including Solar Systems, leases for the use of Solar Systems" ("**Solar Leases**"), and "power purchase agreements to customers" ("**PPAs**" and, together with the Solar Leases, the "**Customer Agreements**"). *Id.* ¶ 13.

40.     PosiGen, PBC is the ultimate parent of the Company.  All other Defendants, as well as the Plaintiffs, are subsidiaries under PosiGen, PBC.  They are purposefully structured as a series of different entities, each with their own unique interests, creating important protections for them as separate corporate entities.  *See* Org. Chart, attached as **Exhibit A.** PosiGen is also the primary obligor on approximately $206 million of funded debt.  *See* Ch. 11 Dkt., ECF No. 11 ¶ 2. PosiGen's Debtor subsidiaries, PosiGen Provider, LLC ("**Provider**") and PosiGen, LLC are the

servicers for these Solar Systems.  *Id.*

41.     PosiGen customers enter into Customer Agreements in connection with the installation of a Solar System on their residential property.  Ch. 11 Dkt., ECF No. 11 ¶ 15.

42.     These are either intended to generate electricity for sale to such Customer or leased to a Customer, in either case under a Customer Agreement.  *Id.* ¶ 15.

43.     Each Project included the associated rights under such Customer Agreement, and all other related rights to the extent applicable thereto.

44.     Under the Customer Agreements, customers are required to make monthly payments but no upfront payment.  Ch. 11 Dkt., ECF No. 11 ¶ 19.

45.     To finance its development operations, PosiGen, acting through its subsidiary, Defendant PosiGen Developer, LLC, sold such Solar Systems together with associated Customer Agreements, solar renewable energy credits and other environmental attributes generated by such Solar Systems and all related revenues, proceeds, rights, and other assets (collectively, "**Projects**") to financing vehicles, including the Project Companies, which purchaser Project Companies then owned the sold Projects.  The financing vehicle purchasers are generally referred to as "**Tax Equity Partnerships**" or "**TEPs**."  *Id.*

46.     A TEP is "an LLC jointly owned by a third-party TEP investor, which receives class A membership interests on account of its capital contribution (the "**Class A Member**")", and a separate wholly-owned Non-Debtor subsidiary of PosiGen which "retain[s] class B membership interests through a non-Debtor special purpose entity (the "**Class B Member**")."  *Id.* ¶ 20.  "[I]n exchange for entitlements to cash flows, solar Investment Tax Credits, and other tax attributes (e.g., depreciation deductions and net operating losses) that such Solar Systems generated," the Class A Member "provided up-front capital contributions used by the TEPs to purchase Solar

Systems" from PosiGen Developer, LLC.  *Id.*

47.     The Class B Members of the PosiGen TEPs are: (i) Rooftop Solar I Manager, LLC ("**Rooftop Manager**"), (ii) PosiGen Bienville Manager, LLC ("**Bienville Manager**"), (iii) PosiGen Decatur Manager, LLC ("**Decatur Manager**"), and (iv) PosiGen Marengo Manager, LLC ("**Marengo Manager**" and, together with Rooftop Manager, Bienville Manager, and Decatur Manager, the "**Managers**"). *Id.* ¶ 21.  Each Class B Member is a subsidiary of non-Debtor PosiGen Backleverage, LLC.  *Id.*

48.     Rooftop Manager, in partnership with its Class A Member, G-I Energy Investments, LLC ("**GAF**"), owns five of the Plaintiff Project Companies: (i) Rooftop Solar I, LLC, (ii) Rooftop Solar II, LLC, (iii) Rooftop Solar III, LLC, (iv) Rooftop Solar IV, LLC, and (v) Rooftop Solar V, LLC (collectively, the "**Rooftop Project Companies**").  *Id.*

49.     Decatur Manager, in partnership with its Class A Member, M&T Community & Environmental Development, LLC ("**M&T**"), owns PosiGen Decatur Project Company, LLC and PosiGen Decatur 2 Project Company, LLC (collectively, the "**Decatur Project Companies**").  *Id.*

50.     Marengo Manager, in partnership with its Class A Member, SAF PGN, LLC ("**Vision Ridge**" and, together with GAF, DFO, and M&T, the "**Class A TEP Investors**"), owns PosiGen Marengo Project Company, LLC ("**Marengo Project Company**").  *Id.*

51.     In addition, PosiGen Owner LLC ("PG Owner" and, together with the Rooftop Project Companies, Bienville Project Company, the Decatur Project Companies, and Marengo Project Company, the "**Project Companies**") is a project company that is not a TEP but instead is wholly owned by Backleverage.  *Id.*

52.     The Company's obligations with respect to the Project Companies are governed primarily by two sets of agreements: Master Engineering, Procurement and Construction

Agreements ("**EPC Agreements**") and TEP LLCAs.

53.     The EPC Agreements, together with related bills of sale, signed by the Project Companies and PosiGen Developer, LLC, a PosiGen subsidiary, transferred title of the various Projects, including the rights to revenues associated therewith, to the Plaintiffs and other Project Companies.  These Agreements are governed by New York law.

54.     The EPC Agreements and related bills of sale make clear that the Project Companies (including the Plaintiffs), not the Debtor, own the Projects and all rights associated with the Projects following the sale.  *See, e.g.,* Marengo EPC Agreement §3.1(m) ("Legal title of each such Project shall, on the applicable Purchase Date, upon consummation of the purchase thereof pursuant to this Agreement, transfer to and remain with Purchaser, free and clear of all Liens.").  These rights include not only the Customer Agreements and related cash proceeds, but also cash proceeds from Solar Renewable Energy Certificates ("**SRECs**") and other environmental attributes.

55.     Likewise, the Bills of Sale executed for these transactions unambiguously state that the Project Companies, including the Plaintiffs, own the Customer Agreement leases and related cash flow and the SRECs.  *See, e.g.*, Marengo Bill of Sale and Assignment ¶ 1 ("Seller does hereby, effective from and after the date hereof, sell, convey, assign, transfer and deliver unto Purchaser **all of Seller's right, title and interest in, to and under each of the Projects** (as defined in the Agreement) with respect to each such Purchased Project . . . free and clear of all Liens.") (emphasis added).

56.     The allocation of the revenue, or cash flow, and tax attributes generated by the Projects owned by a Project Company between the Class A Members and Class B Members of subject Project Company is governed by the TEP LLCAs.  Ch. 11 Dkt., ECF No. 11, ¶ 24.

57.     However, the Project Companies, including the Plaintiffs, never received the cash flows from these Customer Agreements, as Defendants unlawfully diverted the cash into their own cash account.

**B.  Governing Documents Required Separate Cash Management**

58.     As of the Petition Date, the Defendants' cash management system was made up of 47 bank accounts that PosiGen (directly or through one of its subsidiaries) owns and operates. Cash Mgmt. Mot. ¶ 8.

59.     Each Project Company has its own bank account to ensure that the Project Companies' assets remain distinct and separate from those of any other entity (including each other Project Company).  *Id.* ¶ 44.

60.     The creation of separate Project Company bank accounts is required by the TEP LLCAs, which mandate that customer revenues attributable to each TEP (the "**Funds**") be deposited directly into a segregated bank account specific to such TEP.  *See, e.g.*, Sections 2.10(b), 8.2(b) of the TEP LLCA for Marengo and Section 8.03 of the TEP LLCA for each of the Rooftop Project Companies.

61.     As the Debtors admit, failure to utilize these separate Project Company bank accounts was a violation of the TEP LLCAs and the Credit Agreement.  *See* Cash Mgmt. Mot. ¶ 20.

**C.  Company Contracts Further Demonstrate Plaintiffs' Ownership of Customer Agreement Revenue Payments**

62.     The various contracts controlling the Company and its cash management further underscore the strict constraints on the use of cash and the ownership rights that each Project Company had in its respective cash assets.

63.     As a starting point, each Project Company is a legally distinct entity.  For example,

the Rooftop Solar V TEP LLCA, Section 8.04, discusses the concept of entity "separateness": "The Managing Member shall ensure that the Company exists solely for the purpose set forth herein, conducts business only in its own name, has its own separate books, records, and accounts (with no commingling of assets), holds itself out as being a Person separate and apart from any other Person, and observes corporate and partnership formalities independent of any other entity." Similarly, Section 2.10 of the Marengo TEP LLCA, entitled "Separateness" contains a series of covenants that require Marengo Project Company to maintain its separate and distinct existence and, among other things, (i) maintain its own deposit accounts, separate from those of any other person, (ii) conduct its affairs separately from any other person, and (iii) maintain all of its assets in its own name and not commingling its asses of those of any other person.

64.     The Credit Agreement dated as of April 21, 2023, signed between PosiGen Backleverage, LLC, PosiGen, PBC, and additional parties as the lenders and agent (the "**Credit Agreement**"), contains equivalent "Separateness" provisions, including a prohibition on each Project Company: (1) failing to hold all of its assets in its own name, (2) commingling its assets with the assets of any other person, and (3) maintaining its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any other person. Credit Agreement, Section 8.01.

65.     As another example, the Credit Agreement clearly outlines the Project Companies' distinct property rights in each Project's leases, noting "each Project Company owns, leases or will acquire such interests in certain residential photovoltaic systems and/or energy storage systems that are the subject of a Customer Agreement…" Credit Agreement, Recital; *see also* Credit Agreement, Section 5.21 ("Each Project Company and Manager, to the extent the Manager is the owner of the Project, has the requisite real property rights and licenses under the Customer

Agreements to which it is party to access, install, operate, maintain, repair, improve and remove its respective Projects and evidence of such real property rights and licenses has been provided to the Administrative Agent.").

## II.   DEFENDANTS IMPERMISSIBLY MISAPPROPRIATED PROJECT COMPANIES' FUNDS INTO ONE ACCOUNT UNDER THEIR CONTROL AND POSSESSION

66.   Defendants admit that "PosiGen's cash management system and practices did not conform with the various governing and financing documents under its complicated financing structure, and that lease revenues, cash for debt service payments, and operating cash had been commingled." Ch. 11 Dkt., ECF No. 11 ¶ 61.

67.   Indeed, instead of depositing collections of lease revenues and other Project-related revenues directly into each Project Company's distinct bank account, the Debtors improperly swept **all** collections from Projects owned by Project Companies, including Plaintiffs, into an account at KeyBank in the name of PosiGen, PBC (the "**KeyBank Lease Revenue Collection Account**").

68.   Project-related revenue owned by the Plaintiff Project Companies is directly traceable to this KeyBank Lease Revenue Collection Account.

69.   Genpact (UK) Ltd ("**Genpact**") provides customer collection services for the Company, including invoicing customers and monitoring and processing payments. Cash Mgmt. Mot. ¶ 13.

70.   Defendants admit that Genpact causes the Customer Agreement payments owed to the Project Companies, including Plaintiffs, to be deposited into the KeyBank Lease Revenue Collection Account. Cash Mgmt. Mot. ¶ 19. Upon information and belief this has been occurring at least as of January 1, 2024, and likely even before that time.

71.   Each TEP's governing documents required that the Funds be deposited directly into

a segregated bank account specific to each TEP and associated Project Company. *See, e.g.*, Section 8.2(b) of the TEP LLCA for Marengo and Section 8.03 of the TEP LLCA for each of the Rooftop Project Companies. Funds could not be comingled with the Funds of any other entity, including those of the other Project Companies, the Managers or PosiGen or any of the other Debtors. *See id*.

72. Upon information and belief, and despite their claims, Defendants never actually maintained a structured system of transferring Plaintiffs' revenues into Plaintiffs' appropriate accounts.

73. Records demonstrate that the Project Companies' revenues, including Plaintiffs', wrongfully went to a single account in PosiGen's name, rather than going into each individual Project Company account.

74. Accordingly, Defendants' actions deprived Plaintiffs of their correct monies owed.

## III. DEFENDANTS ADDITIONALLY ADMIT TO DIVERTING PLAINTIFFS' FUNDS TO OTHER COMPANY ENTITIES

### A. Defendants Admit to Taking Plaintiffs' Funds For Use By Other Company Entities

75. Defendants further admit, in their own papers, that prior to the Petition Date, Defendants used Funds placed in the KeyBank Lease Revenue Collection Account, and then transferred to the First Horizon Concentration Account[4], to fund PosiGen's ordinary operating expenses. *See* Cash Mgmt. Mot. ¶ 13.

76. The Project Companies received no benefit from or in exchange for the diversion of their Funds to other Company entities.

---

[4] As defined in the Cash Mgmt. Mot.

**B. Defendants Falsely Represent to the Court that the Funds are Available for Defendants' Use**

77.     On November 7, 2025, shortly prior to the Petition Date, Defendants represented to the Federal Court in the District of Connecticut, in a separate lawsuit brought by CGB, that it "could not pay operating expenses, service its debt, pay its suppliers, or continue to make payroll…without an immediate cash infusion," and that it "would be forced into a disorderly collapse" absent rescue financing. Defendant PosiGen, PBC's Opposition To Plaintiff's Motion For A Temporary Restraining Order And Preliminary Injunction at 4, 16, *Connecticut Green Bank v. PosiGen, PBC*, No. 3:25-cv-1841-SVN (D. Conn. Nov. 12, 2025), Dkt. No. 64, 2025 WL 3158254.

78.     Debtors' statements to the Federal Court in Connecticut mirror the statements they had been making for months to representatives of Brookfield and the Backleverage Entities that they had no access to unencumbered cash and would immediately cease operations absent the rescue financing.

79.     Defendants now purport to this Court, as of the Motion Filing Date, to "have approximately $13.4 million of unencumbered available cash on hand, the majority of which cash is held at the KeyBank Lease Revenue Collection Account," which is under the control of PosiGen. *See* Cash Mgmt. Mot. ¶ 8.

80.     Not only have Defendants made contradicting statements before different courts, but additionally this latest representation is clearly false.  The cash held at the KeyBank Lease Revenue Collection Account as of the Motion Filing Date is by no means "unencumbered."  As Defendants are aware, this cash belongs to the Project Companies, including Plaintiffs, and was stolen by Defendants.

### C. Defendants Admit to Fraudulently Double Pledging Assets to Multiple Project Companies

81.     Defendants' diversion and misappropriation of cash belonging to the Project Companies, including Plaintiffs, is far from the first instance of Defendants engaging in extensive misconduct.

82.     Among other things, the Debtors illegally double-dipped by deceptively selling *thousands* of projects they no longer owned—because they had previously sold the *exact* same Projects to other Project Companies for cash proceeds—to Project Companies for duplicative cash payments.

83.     Defendants do not hide from this gross misconduct, which may amount to fraud, admitting in its bankruptcy filings that the Company sold or pledged assets to multiple counterparties and then obtained financing on the basis thereof from more than one party.  Ch. 11 Dkt., ECF No. 11 ¶ 61.

*** 

84.     Defendants continue to have the ability to further deplete Plaintiffs' assets by spending or diverting money that should be directed to Plaintiffs' accounts into those of other Defendant entities and accounts under their control.  If this Court does not grant the requested relief, Defendants' expenditure of Plaintiffs' cash will irreversibly and permanently harm Plaintiffs because the money will be gone.

85.     Plaintiffs accordingly bring this action to return the revenue Defendants wrongfully and unlawfully misappropriated from the Plaintiff Project Companies' bank accounts, for the benefit of the Plaintiffs.

## COUNT I

### Conversion
### (Against All Defendants)

86.     Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations as if fully set forth herein.

87.     Conversion entails the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owners' rights.  For the reasons explained below, Defendants have unlawfully converted property that Plaintiffs have an ownership interest in, without authorization, by exercising possession and ownership over the Funds and should be deemed to have refused Plaintiffs' demand that PosiGen return the Funds to which Plaintiffs are entitled to possession of.

88.     All revenues under the Plaintiff Project Companies' Customer Agreements are property of the Plaintiff Project Companies and are to be placed in segregated accounts belonging to each Plaintiff Project Company for its individually owned revenues.

89.     PosiGen was obligated to distribute the Funds to Plaintiffs' individual and segregated bank accounts.

90.     Instead, PosiGen channeled the Funds rightfully owed to its subsidiary Project Companies into the KeyBank Lease Revenue Collection Account, an account that remains under its sole possession and control, to the exclusion of Plaintiffs.

91.     The diversion of the Funds—and the resulting deprivation of Plaintiffs' control of their rightful property—was done without authorization from Plaintiffs or any person entitled to act on behalf of Plaintiffs with regard to these funds.

92.     Defendants have also wrongfully exercised dominion and right of ownership over the Funds by representing to the Court that the Funds are unencumbered, suggesting the Funds in

the KeyBank Lease Revenue Collection Account that it controls belong to PosiGen.  They do not.

93.     Defendants thus have assumed unauthorized control and exercised ownership over the Funds without authorization to the exclusion of Plaintiffs' rights.  In effect, Defendants have unlawfully converted the Funds owed to Plaintiffs.

94.     Plaintiffs, the rightful possessors of such funds, cannot issue a demand to Defendants for return of such Funds.  To do so would violate the automatic stay entered when Defendants filed for chapter 11 Bankruptcy.

95.     Plaintiffs were actively negotiating this issue, while funding Defendants' operations, when Defendants filed for bankruptcy without notice.  Had Plaintiffs received advance notice of Defendants' intention to file for bankruptcy, Plaintiffs would have made this demand on Defendants prior to the automatic stay taking effect.

96.     Therefore, Plaintiffs, by and through this adversary complaint formally demand Defendants immediately relinquish and transfer the Funds into a designated account for the benefit of Plaintiffs.

97.     As Defendants' baseless assertion that the funds in the KeyBank Lease Revenue Collection Account as of the Motion Filing Date are "unencumbered" is a clear refusal to return Plaintiffs' property, Plaintiffs now seeks all remedies available under New York law, or any other law as this court shall seek fit to apply, for a return of the converted property.

## COUNT II

### Unjust Enrichment
### (Against All Defendants)

98.     Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations as if fully set forth herein.

99.     Defendants were enriched and received direct, concrete economic benefits without

legal or equitable justification, including, but not limited to, through the diversion and receipt of the Funds at Plaintiffs' expense.

100.    Defendants unlawfully retained the Funds belonging to Plaintiffs in its KeyBank Lease Revenue Collection Account – assets to which Defendants have no lawful claim of ownership.

101.    Pursuant to the TEP LLCAs and various other agreements, PosiGen was obligated to direct these funds to Plaintiffs.

102.    PosiGen now claims the Funds are unencumbered.  Moreover, PosiGen has suggested it has no obligation to distribute the Funds rightfully owed to Plaintiffs.  PosiGen has therefore been enriched by the Funds while Plaintiffs have been deprived of their assets without receipt of any reasonably equivalent value or corresponding assets.

103.    There is a direct, proximate, and traceable relationship between Defendants' enrichment and Plaintiffs' missing assets.

104.    Money amounting to at least $10.5 million due to Plaintiffs under the LLCA and other various agreements was transferred by customers, through Genpact, as payment owed for Projects owned by Plaintiffs.  Instead of transferring to Plaintiffs, this money was held by Defendants, upon information and belief, primarily in the KeyBank Lease Revenue Collection Account, as of the Motion Filing Date, which is owned or controlled by Defendants.

105.    No legitimate corporate purpose, consideration, or fair value supports Defendants ordering these Funds to be transferred to their own accounts rather than Plaintiffs' accounts.

106.    At least $10.5 million, if not more, was conferred on Defendants unlawfully. Defendants appreciated and accepted that benefit, and Defendants' continued retention of that benefit would be inequitable under the circumstances.

107.    Principles of equity and good conscience require that the funds be returned to Plaintiffs.  Absent a return of the Funds or the corresponding enrichment conferred on Defendants, Defendants will have wrongfully deprived Plaintiffs of the Funds they were entitled to, without compensation.  Furthermore, absent the Funds, Plaintiffs could default on their own business obligations.  Defendants' misconduct should not be permitted to propagate ill effects further downstream more than it already has.

## COUNT III

### Constructive Trust
### (Against All Defendants)

108.    Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations as if fully set forth herein.

109.    A constructive trust is an equitable remedy imposed to prevent unjust enrichment where a defendant, through fraud, breach of fiduciary duty, unfair or unconscionable conduct, or abuse of confidence, acquires or retains property that which in equity and good conscience belongs to another.

110.    As detailed in this Complaint, Plaintiffs relied upon Defendants to collect and distribute the Funds, to which Plaintiffs are entitled.  Defendants instead engaged in deceptive, unfair, and unconscionable conduct, including the diversion and misappropriation of corporate funds.

111.    By virtue of this misconduct, Defendants were directly and materially enriched. Defendants obtained and continue to retain specific, identifiable property traceable to Plaintiffs.

112.    Defendants received and retained Plaintiffs' assets by wrongful diversion of the Funds.  Continued possession of such property is inequitable and would unjustly enrich Defendants at the expense of Plaintiffs.

113.     Equity therefore deems Defendants constructive trustees of Plaintiff Project Companies' share of the Funds and all traceable proceeds, substitutions, and products (collectively, the "**Constructive Trust Property**") for the benefit of Plaintiffs.

114.     The Constructive Trust Property is sufficiently specific and traceable: the transfers originated from customer payments specifically attributable to Projects owned by the Project Companies, and were directed to the KeyBank Lease Revenue Collection Account.

115.     Legal remedies are inadequate because Plaintiffs seek restitutionary, in-kind relief as to specific funds and assets; equitable relief is necessary to permit tracing, preserve the Constructive Trust Property, and avoid dissipation.  An accounting is warranted to identify all property constituting or derived from the Constructive Trust Property.

116.     Accordingly, Plaintiffs seek entry of judgment: (a) declaring and imposing a constructive trust over the Constructive Trust Property and all proceeds, products, offspring, and substitutions; (b) directing Defendants to convey, transfer, and turn over the Constructive Trust Property to Plaintiffs; (c) ordering an accounting and tracing of all relevant accounts and assets; and (d) awarding pre- and post-judgment interest and such other equitable relief as the Court deems just and proper.

## COUNT IV

### Accounting
### (Against all Defendants)

117.     Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations as if fully set forth herein.

118.     PosiGen comingled the Funds rightfully owed to Plaintiffs into one account, in violation of the TEP LLCAs and various other agreements, making it difficult to identify the revenues attributable under the respective agreements.  PosiGen comingled the Funds in direct

24

violation of the LLCAs and other various agreements and could only do so because it retained a position of trust and confidence in relation to Plaintiffs.

119.    Adequate relief to untangle such extensive comingling may not be obtained through standard discovery procedures, such as production and interrogatories.

120.    Plaintiffs, the rightful possessors of the Funds, cannot issue a demand to Defendants for an accounting because Defendants entered into the above-captioned chapter 11 bankruptcy proceedings and to do so would violate the automatic stay.

121.    Therefore, Plaintiffs, by and through this complaint formally demand Defendants immediately provide an accounting of the KeyBank Lease Revenue Collection Account and the First Horizon Concentration Account.

122.    If Defendants refuse to provide an accounting of the KeyBank Lease Revenue Collection Account and the First Horizon Concentration Account, then Plaintiffs are entitled to an equitable accounting.

## COUNT V

### Money Had and Received
### (Against All Defendants)

123.    Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations as if fully set forth herein.

124.    Defendants received monies owed to Plaintiffs (i.e. the Funds), as set forth herein.

125.    By receiving funds belonging in Project Company accounts for personal gain, Defendants wrongfully had or held money that belongs to the Project Companies, including Plaintiffs, and in which Plaintiffs possess a property interest.

126.    Further, Defendants received a benefit from the receipt of the Funds and now claim the Funds are unencumbered assets, suggesting Defendants wrongfully believe they are the owners

of the Funds.

127.     Accordingly, equity and good conscience require that Plaintiffs are entitled to equitable recovery of any benefits Defendants received that rightfully belong to Plaintiffs.

## COUNT VI

**Declaratory Judgment That Defendants Cannot Assert the $13.4 Million of Funds is Unencumbered or Belongs to Them**
**(Against all Defendants)**

128.     Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations as if fully set forth herein.

129.     The $13.4 million does not belong primarily, if at all, to the Defendants.

130.     Pursuant to the terms of the agreements described above, the Project Companies have an interest in at least $10.5 million held in the KeyBank Lease Revenue Collection Account as of the Motion Filing Date.

131.     Defendants are also judicially estopped from asserting that the $13.4 million at issue is unencumbered or belongs to them.

132.     Defendants represented in federal court only weeks ago that they did not have such cash funds available.  Not only did Defendants asserted in their papers they "would be forced into a disorderly collapse" absent rescue financing, but they also represented in oral testimony during a November 7, 2025 hearing that without the bridge fund money "the alternative is, [to] shut down." Verbatim Report of Proceedings Before, 52:8-10, *Connecticut Green Bank v. PosiGen, PBC*, No. 3:25-cv-01841-SVN (D. Conn. Nov. 12, 2025), 2025 WL 3158254.

133.     To permit Defendants to immediately turn around and claim they have $13.4 million in unencumbered cash creates impermissible benefit to Defendants for their prior opposing representations.

134.     Therefore, a justiciable controversy exists over whether the Funds are encumbered.

## COUNT VII

**Declaratory Judgment That Future Proceeds from the Project Companies Leases Must Be Directed Immediately into Accounts Segregated to Each Project Company (Against all Defendants)**

135.    Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations as if fully set forth herein.

136.    Plaintiffs, as the proper recipients of funds collected pursuant to Customer Agreements, SREC Monetization Agreements, and TCTAs, have a right to receive all funds received by Defendants pursuant to those agreements.

137.    Defendants continue to violate the Credit Agreement, the TEP LLCAs, EPC Agreements and Purchase Agreements and deposit monies rightfully owed to Plaintiffs in the KeyBank Lease Revenue Collection Account, in violation of Plaintiffs' right to the monies.

138.    Therefore, a present judiciable controversy exists over whether future revenues collected pursuant to these agreements should be distributed to Plaintiffs.

139.    Accordingly, Plaintiffs are entitled to the imposition of a constructive trust over assets and proceeds in Defendants' control, an accounting, and pre- and post-judgment interest at the maximum rate permitted by law, declaratory relief, as well as such other and further equitable relief as the Court deems just and proper

## RESERVATION OF RIGHTS

140.    During the course of this proceeding, Plaintiffs may learn through discovery or otherwise of additional claims or causes of action that are actionable under the provisions of the Bankruptcy Code or other applicable law.  Plaintiffs reserve all rights to amend this original Complaint to, among other things: (i) modify or revise Defendants' names; (ii) add additional defendants; and/or (iii) add claims or causes of action, if applicable, that may become known to Plaintiffs at any time during this adversary proceeding, through formal discovery or otherwise, and

for such amendments to relate back to the filing of this original Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court enter judgment against Defendants:

a) Enter judgment in favor of Plaintiffs on the first claim for relief requiring specific performance;

b) Declaring that Defendants were unjustly enriched at the expense of Plaintiffs, and awarding damages in an amount to be determined at trial;

c) Imposing a constructive trust upon Defendants' accounts with respect to the diversion of the Funds in which Plaintiffs hold interest;

d) Ordering an equitable accounting;

e) Enter a declaratory judgment in favor of Plaintiffs that Defendants cannot claim that the money held in the KeyBank Lease Revenue Collection Account as of the Motion Filing Date is unencumbered, as Plaintiffs and other parties hold interest in such property, and Defendants are also judicially estopped from making such representations;

f) Enter a declaratory judgment in favor of Plaintiffs that the future proceeds from the Project Companies' leases must be directed immediately into accounts segregated to each Project Company;

g) Compensatory and consequential damages, in amounts to be determined, together with pre- and post-judgment interest at the maximum rate allowed by law;

h) An award of pre- and post-judgment interest; and

i)   Such other and further relief as this Court deems just and equitable.

Respectfully submitted on the 8th day of December, 2025.

Houston, Texas

                                   */s/  Gabriel A. Morgan*
                                   WEIL, GOTSHAL & MANGES LLP
                                   Gabriel A. Morgan (24125891)
                                   Clifford W. Carlson (24090024)
                                   700 Louisiana Street, Suite 3700
                                   Houston, Texas 77002
                                   Telephone:  (713) 546-5000
                                   Facsimile:  (713) 224-9511
                                   Email:      gabriel.morgan@weil.com
                                               clifford.carlson@weil.com

                                   -and-

                                   WEIL, GOTSHAL & MANGES LLP
                                   Jeffrey Saferstein (admitted *pro hac vice*)
                                   David Griffiths (admitted *pro hac vice*)
                                   Jessica Falk (*pro hac vice* pending)
                                   Michael Creme (admitted *pro hac vice*)
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   Telephone:  (212) 310-8000
                                   Facsimile:  (212) 310-8007
                                   Email:   jeffrey.saferstein@weil.com
                                            david.griffiths@weil.com
                                            jessica.falk@weil.com
                                            michael.creme@weil.com

                                   *Attorneys for Plaintiffs*